## Cheatham *v.* Smith

No. 40347 January 14, 1957 92 So. 2d 203

*Dees Stribling,* Philadelphia, for appellant.

*Clayton Lewis,* Philadelphia, for appellee.

ETHRIDGE, J.

This is a petition for writ of mandamus brought by a school teacher, appellee Mrs. Ella K. Smith, against the County Superintendent of Education of Neshoba County, I. M. Latimer, and later revived in the name of his successor, Jack Cheatham, seeking to compel the county superintendent to issue to her salary warrants upon her contract to teach. The circuit court granted this relief, and we affirm that decision.

I.

Prior to the scholastic year 1955-56, Mrs. Smith taught for eight years in the House Consolidated School District of Neshoba County. On March 28, 1955, the board of trustees of the school district met for the purpose of choosing teachers for the school term of 1955-56, and selected Mrs. Smith along with several others. The minutes of March 28 reflect those facts, and also state: "We require that these teachers that do not have degrees take summer work toward their degree in order to hold their jobs."

Under Chapter 20, Section 9, Miss. Laws 1953, Ex. Sess., the Neshoba County Board of Education was required to pass upon and approve or disapprove the employment of the teachers so elected by the board of trustees of the school district, and to enter such action upon its minutes. The minutes of the Board of Education of Neshoba County reflect that on July 18, 1955, the board met with the five members being present and proceeded

to transact the following business: ''The matter of authorizing the Superintendent of Education to enter into contract with the various school Teachers of Neshoba County came on for consideration and after a discussion of same a move was made by Mr. Ben Watkins and seconded by Mr. Arnold Barrier to authorize the Superintendent of Education to enter into a contract with the following named person as Teacher in the public schools of Neshoba County at the place and salaries as indicated below.'' Following this statement, the minutes of the board list the names of a large number of teachers under the respective headings of twelve different schools in Neshoba County, and following the teacher's name is the salary. Under House School District is listed ''Mrs. Ella K. Smith, $1,800 per year.'' After this list of teachers and their salaries, the minutes state: ''A general discussion of school affairs was had and the board recessed until Monday, August 2, 1955, at 9 o'clock.'' The minutes were signed by the president of the board, but were not attested by the county superintendent of education, who serves as the executive secretary of the county board of education. Miss. Laws 1953, Ex. Sess., Chapter 16, Section 5.

Pursuant to these actions reflected on the minutes of the board of trustees of the school district and of the county board of education, on August 2, 1955, I. M. Latimer, county superintendent of education, signed a written contract of employment with Mrs. Smith. The contract recites that Mrs. Smith ''has been duly selected and approved in the manner provided'' in the 1953 laws for the position of teacher in the House School District for the scholastic year for 1955-56; that Latimer is required by the statutes to enter into a contract with Mrs. Smith; that she is hereby employed as a teacher for such school year of eight months at a salary of $225 per month for eight months; and that Mrs. Smith accepts such employment and the obligation to perform such duties.

On August 19, 1955, which was Wednesday before school opened on Friday, Mrs. Smith attended a meeting of all of the elected teachers of the House School District, pursuant to a notice. of such meeting. On August 21, she received a letter from the Superintendent of the House School District notifying her that she was discharged as a teacher. That letter is not in the record, and is not described in the testimony, but it appears that the reason for the attempted discharge was that Mrs. Smith did not take summer school work in a college or university for the summer of 1955. She was given no notice or hearing with reference to any charges, and appellants do not contend that she was discharged in the manner required by Chapter 20, Section 26, Miss. Laws 1953, Ex. Sess. Appellee is a licensed teacher with the State Department of Education, qualified as a Class "B" elementary teacher. On September 29, 1955, Mrs. Smith filed in the circuit court her petition for a writ of mandamus.

At the trial Mrs. Smith testified that she knew nothing of any purpose to terminate her employment until she received the letter from the superintendent of the school district. She advised the superintendent and the board of trustees that she was expecting to be paid under her contract. However, she attempted to obtain teaching employment elsewhere but had been unable to get another teaching job at the time of the trial. She said she knew nothing of any requirement that she take summer school work. She had a room rented to enable her to go to summer school, but she testified that she was badly burned and was physically unable to do so. Mrs. Smith does not have a college degree, but has attended college four and one-half years and needs a few credits to obtain such a degree. On cross-examination she was asked if she did not help her husband in his cafe for the summer of 1955. She replied that she did practically no work there, but may have waited on customers on a few occasions.

I. M. Latimer, county superintendent of education when the suit was filed, admitted that no notice and hearing was given to Mrs. Smith of her discharge. With reference to the minutes of the Neshoba County Board of Education, Latimer, whose job it is to keep the minutes, testified that those of July 18 constituted "the allotment of teachers for each school." The school teachers listed in the minutes were those intended to be employed by the county board. Mrs. Smith was one of the teachers designated in that list. They were recommended by the board of trustees of the district to the county board of education. Latimer thought that the board of education was employing the teachers under the 1953 laws, both by the resolution in the minutes and the contracts made with the teachers.

A. E. Keen, a Member and Secretary of the Board of Trustees of School District, testified that shortly after the first semester of summer school he went by the cafe and asked Mrs. Smith whether she had been to summer school, to which she replied she had not, having been so busy around the cafe. She was waiting on customers. Ollie Munn, another member of the school district board of trustees, said there were several teachers with "B" licenses, and the board thought they should do summer school work to improve their classifications. The teachers were not given a copy of the minutes. L. R. Killen, of the board of trustees, testified that he talked with Mrs. Smith several weeks after school began in August 1955; she told him that the school superintendent advised her that they would require her to go to summer school. The school trustees did not notify the county board of education not to employ Mrs. Smith.

The circuit court made no mention of the last sentence in the order of the board of trustees. With reference to the minutes of the county board of education, it held that the omission of the word "approved" cannot be charged to petitioner, because she had a right to rely upon the

statements in her contract reciting that she had been duly elected and approved in the manner provided by law; that the error was that of Latimer, executive secretary of the board of education, whose duty it was to write the minutes. Mrs. Smith had no opportunity to examine the board's minutes. The court held that her contract was valid, and if it were not, contracts with all teachers whose names appear in the order of July 18 would likewise be void. Since she was not discharged in the manner prescribed by Section 26, Chapter 20, and mandamus was the proper remedy, the final judgment directed that a writ of mandamus be issued to Latimer commanding him to issue a warrant to Mrs. Smith in the amount of her accrued salary as of December 9, and to further issue to her monthly at the end of each month for the school year covered in her contract a warrant in the amount provided for in her contract, unless and until she receives employment. In that event, if her salary is less than her contract salary, the warrant shall be for the difference. An appeal with supersedeas was taken.

## II.

■■ Appellee pursued the correct remedy, provided her contract was unconditional and properly approved by the county board of education. ■■ Where a teacher has a contract to teach, he or she has a valuable right which may be enforced by mandamus. Stokes v. Newell, 172 Miss. 289, 295, 159 So. 540 (1935); Brown v. Owen, 75 Miss. 319, 23 So. 335, 942 (1898); Whitman v. Owen, 76 Miss. 783, 25 So. 669 (1899); State v. Morgan, 141 Miss. 585, 106 So. 820 (1926); State v. Alexander, 158 Miss. 557, 130 So. 754 (1930); see also McGaha v. Curlee, 176 Miss. 671, 169 So. 694 (1936); Crowson v. Crawford, 216 Miss. 770, 63 So. 2d 234 (1953). ■■ She may also obtain an injunction to prevent trustees from contracting with another, and to prevent another from interfering with the teacher in the discharge of her duties. Campbell v. Warwick, 142 Miss. 510, 107 So. 657 (1924). ■■

In a mandamus suit the court also may require the county superintendent of education to issue a contract to the teacher, provided the board has approved the same and subject to limitations of statute, and may require the issuance of pay certificates for the compensation to which the teacher may be entitled under the contract. Crowson v. Crawford, supra; Whitehurst v. Smith, 170 Miss. 535, 155 So. 683 (1934). ■■■ However, in order for a teacher to avail herself of such rights, legal action must be taken before the operation of the scholastic term covered by the contract, insofar as public funds are concerned. Whitehurst v. Smith, supra; Stokes v. Newell, supra. See also Stokes v. Newell, 174 Miss. 629, 642, 165 So. 542 (1936), and Treloar v. Rogers, 45 So. 2d 274 (Miss. 1950) (suits in tort against school trustees.) Since appellee complied with the requirements as to mandamus she pursued the proper remedy.

## III.

The main issue is whether appellee has a valid contract of employment in the House School District. Appellant contends that the minutes of the board of trustees of the school district of March 28, 1955, reflect that appellee was conditionally elected, on the contingency that she attend summer school; that it is undisputed that she did not do this; and therefore the employment contract never became effective, since appellee did not comply with this condition precedent. As quoted above, the minutes show that appellee was reelected as teacher, along with others, and state: "We require that these teachers that do not have degrees take summer school work toward their degree in order to hold their jobs."

We do not need to consider whether the board of trustees of the school district had the power to impose a condition of this type to the terms of the employment contract, under Chapter 17, Sections 3 and 4 (17) of the Laws of 1953, Ex. Session. It is manifest that the

trustees of the school district intended to make this a requirement with reference to the school teachers. ██ █ But no intention is indicated to make it a condition to the effectiveness of the contract. The minutes of March 28 wholly fail to indicate that it was a condition precedent or subsequent to the employment contract of the teachers previously reelected in the same minutes on the same day. Hence the summer school provision, not being a condition to the contract, did not automatically invalidate it. It was an administrative requirement of the board of trustees. See Stricklin v. Copeland, 166 Miss. 244, 146 So. 311 (1933). If Mrs. Smith violated it, and if establishing it was within the powers of the board of trustees under Chapter 17, appellee could be removed or discharged as teacher only in accordance with the provisions of Section 26, Chapter 20, Miss. Laws 1953, Ex. Session. And no attempt whatever was made to comply with Section 26.

IV.

 Appellant also argues that the Neshoba County Board of Education did not approve in its minutes the appointment of appellee as a teacher. Under Chapter 20, Section 7, the board of trustees of the school district elects the teachers, usually as recommended by the superintendent of the school district. Under Section 8 the board of trustees then notifies the county superintendent of education of the teachers so elected by them. At its next meeting after receiving such notification, Section 9 provides that the ''county board of education, after consulting with and obtaining the recommendation of the county superintendent of education, shall pass upon and approve or disapprove the employment of all teachers so elected by the boards of trustees and such approval or disapproval shall be entered upon the minutes thereof.''

The question is whether the minutes of the county board of education of July 18, 1955, were sufficient to constitute an approval of the election of teachers by the

board of trustees of the House School District. The minutes have been quoted above. They recite that the county board of education took up the matter of authorizing the superintendent to enter into contracts with teachers, and after discussion a motion was made and seconded to authorize the county superintendent to enter into a contract with the "following named person as teacher in the public schools of Neshoba County at the place and salaries as indicated below." Following that is listed twelve different schools, among them the House School. Under that category are the names of twelve teachers, including Mrs. Smith at $1,800 per year. The minutes close by reciting that the board had a general discussion of school affairs and then recessed. They do not expressly state that the motion, as seconded, was approved. Does a fair interpretation of these minutes warrant the conclusion that the motion was approved? We think it does. The duty to keep minutes is placed upon the county superintendent of education, who is the board's executive secretary. He, Latimer, prepared them with the assistance of the board's attorney. They were intended to comply with the 1953 laws in employing teachers and constituted "the allotment of teachers for each school." Accordingly he signed the contract with Mrs. Smith. It recited that she had been "duly selected and approved" according to law for the position of teacher. Manifestly ommission of the word "approved" was a clerical error.

Boards of trustees for school districts can act only through their minutes. But the pertinent criteria are similar to those with reference to county boards of supervisors. In Martin v. Board of Supervisors of Winston County, 181 Miss. 363, 386, 178 So. 315 (1938), it was said that: "In dealing with boards or courts administered by men unlearned in techincal requirements, strict construction of their orders should not be had." In Noxubee County v. Long, 141 Miss. 72, 82, 106 So. 83 (1925), it

was said: "The minutes of boards of supervisors reciting their orders and judgments, like those of justices of the peace, will be looked upon with indulgence. Although they may be unskillfully drawn, if by a fair and reasonable interpretation their meaning can be ascertained, they will be sufficient to answer the requirements of law." ■■ ■ Strictness of verbiage is not required; all that is necessary is substance, and a fair, reasonable construction of the order. Peoples Bank v. Attala County, 156 Miss. 560, 126 So. 192 (1930).

The school district's board of trustees elected the teachers for the school district, pursuant to recommendations of its superintendent. The duty of the county board of education was simply to approve or disapprove the selections. To hold that the order of July 18 did not approve them would invalidate the contracts of the numerous teachers named therein. It is undisputed that it was the board's intention that the order of July 18 should be an approval of those contracts, including that of Mrs. Smith. Considered as a whole, the minutes evidence that intention and reflect that action. They were made effective in the contract with appellee. We think that the clerical omission of the word "approved" was not such a deficiency in the order as to deprive it of its undisputed purpose, the approval of the election of teachers as made by the school district's board of trustees.

■■ ■ Appellants also argue that, since the minutes of July 18 were not attested by the secretary of the board of education, who is the county superintendent of education, the minutes are invalid. They were signed by the president of the board. The statutory direction that they should be attested by the secretary is directory and not mandatory. Miss. Laws 1953, Ex. Sess., Chapter 16, Section 5. Failure of the executive secretary of the board to attest the minutes is an irregularity but not a fatal defect.

It therefore follows that Mrs. has a valid, effective contract for her employment as a teacher for the scholastic year of 1955-56. She has pursued the proper remedy. Since she was not removed or discharged from her job in accordance with the due process provisions of Section 26, Chapter 20, Laws of 1953, Ex. Sess., her contract is enforceable in this proceeding. The other assignments of error have been considered and rejected.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Gillespie,* JJ., concur.