STOKES *v.* NEWELL *et al.*

(Division B. Jan. 27, 1936. Suggestion of Error Overruled Mar. 9, 1936.)

[165 So. 542. No. 32053.]

See, also, 172 Miss. 289, 159 So. 540.

**Butler & Snow**, of Jackson, for appellant.

Watkins & Eager and W. E. Morse, all of Jackson, for appellees.

634

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, Miss Clara Stokes, filed a declaration in the circuit court of Hinds county against H. T. Newell, W. H. Pullen, Jr., B. B. McClendon, John C. Batte, and Mrs. J. K. McDowell, individually and as composing the board of trustees of the municipal separate school district of Jackson, Mississippi, and James G. Chastain, Jr., individually and as superintendent of the schools of said district. She set forth the creation of said district, and alleged that she is, by profession, a school teacher and administrator, holding, since September, 1918, a first-grade license or certificate from the superintendent of Hinds county and from the state board of examiners to teach in this state; that she was regularly elected and employed by the board of trustees in teaching and school administrative work in the Central High and Junior

High Schools in said district since said date, and was so elected and employed as principal of the Central Junior High School for the term 1933-34, at an annual salary of one thousand six hundred dollars, payable monthly at the rate of one hundred sixty dollars. That on and prior to May 9, 1933, said board had established and had in force and effect a classification and basis of pay for all teachers, principals, and administrative officers selected by them to perform services within said district, by which no teacher in the white schools received less than eight hundred dollars per annum, and under which plaintiff received the salary of one thousand six hundred dollars, as aforesaid. That on May 9, 1933, plaintiff was re-elected by the board of trustees of said district to her position as principal of said Central Junior High School for the session of 1933-34, along with all other white teachers and principals, with the understanding that the salary and basis of pay for all of them would be fixed as soon as the annual budget for said period had been made and approved, and plaintiff was notified of her election for the aforesaid term, accepted said employment, and, with defendants' knowledge, entered upon the discharge of the preliminary duties of her office, and thereby a contract of employment was entered into by and between the board of trustees and this plaintiff; that no written contract was executed, but the plaintiff alleged that such was unnecessary and not required by law; and further, that if a written contract was necessary, its absence was due solely to the fault of the individuals composing the board of trustees, and James G. Chastain, Jr., and that such fault was the product of arbitrary, willful, unlawful, personal, and political motives. Plaintiff further alleged that by reason of the aforesaid election she became and was vested with a fixed and valuable right, and was entitled for the 1933-34 session to discharge the duties of said place and to receive the compensation fixed by the trustees therefor. Plaintiff further alleged that on and

prior to July 1, 1933, the trustees determined the amount of money required for the schools of said district, and submitted same to the mayor and board of commissioners of said city of Jackson, who approved same, and the trustees made no alteration therein, except that beginning teachers without experience would be paid seventy dollars per month for the first year, but for the session of 1933-34, the trustees adopted and conformed to the classification and salary schedule of 1932-33, under which plaintiff was entitled to a salary of one thousand six hundred dollars per annum, payable monthly as aforesaid. That notwithstanding these facts, plaintiff alleged that on or about July 25, 1933, the individuals composing the board of trustees and purporting to act as such, consisting of a changed personnel, without just cause, wrongfully and without legal right, and arbitrarily, for purely personal and political motives, directed the said James G. Chastain, Jr., to advise plaintiff that her services would no longer be required as principal of the Central Junior High School; that he notified plaintiff in writing pursuant to the aforesaid directions, and thereafter he and the individuals named, purporting to act as the board of trustees, refused to permit plaintiff to discharge the duties of principal of said Junior High School, to which place and position she had been duly and regularly elected by the former board of trustees on May 9, 1933, and, although requested so to do, has failed and refused to write an order to the clerk of said municipality to issue a warrant on the available school funds of said district in favor of plaintiff for her salary, or any part thereof. It was further alleged in the declaration that plaintiff has been, at all times since May 19, 1933, up to and including July 1, 1934, able, ready, and willing to discharge all duties required of her as principal and teacher of said school, and has held herself in readiness and offered to do and perform the same, but without avail. Plaintiff further alleged that since July 25, 1933, when

she was notified that she would not be permitted to discharge the duties of the place to which she had been elected, she made diligent effort to obtain other work and employment, but wholly failed to secure other work during said time. It was further alleged by plaintiff that on or about July 17, 1934, she filed a petition for mandamus to compel the board of trustees to write an order to the clerk of the city of Jackson to issue a warrant or pay certificate in her favor for one thousand six hundred dollars, and deliver same to her. Upon a hearing thereof, the court held that since the petition was not filed until after the expiration of the term for which she had been elected, plaintiff could not recover, and that her recourse, if any, was against the school authorities, and not against the public and its fund. Plaintiff further alleged that by reason of the acts aforesaid she has been damaged in the sum of one thousand six hundred dollars, for which she demands judgment, together with interest at the rate of six per cent from July 1, 1934, until paid.

The defendants demurred to the declaration, alleging that it fails to state a cause of action; that there is no showing of individual liability; that there is no liability against said defendants as trustees; and that there is no authority in law to sue the separate school district, the trustees, or superintendent while serving. This demurrer was, by the court below, sustained, and plaintiff declining to plead further, final judgment was entered dismissing the suit, from which this appeal is prosecuted.

We are of the opinion that the court below erred in sustaining the demurrer against the defendants as individuals. The opinion of this court referred to in the declaration is reported in the case of Stokes v. Newell et al., 172 Miss. 289, 159 So. 540.

Section 6665, Code of 1930, defines the powers and duties of separate school district trustees. By clause 9 of that section it is provided: "To elect teachers, fix salaries, terms of service, contract with them and impose

fines, penalties for neglect of duty, but they cannot contract with a principal or a teacher who does not hold a license or certificate from the county superintendent or state board of examiners," etc. Under clause 10, it is provided: "To contract with superintendents, principals and teachers, for a term of years not exceeding three years, said salaries at the option of the board to be made payable monthly twelve months in the year; to pay teachers for the time lost on account of closing of schools by county or state health officers, or by boards of trustees in emergency cases; provided, such action is approved by the state board of education. The amount to be paid shall be determined by the board of trustees." By clause 13 it is provided that to determine the amount of money required for the support of the public schools the trustees shall, on or before July 15th of each year, submit, in writing, to the mayor and board of aldermen an itemized estimate of the expenditures for the next scholastic fiscal year, and of the whole amount of money to be received from the state and county, and the amount received from the municipality for the above purposes, and to be responsible for all expenditures for school purposes, and to write orders to the clerk of the municipality or to the county superintendent to issue warrants or pay certificates on any available school funds of such districts.

This statute does not prescribe how contracts shall be made, whether in writing or orally, but the law is that an order entered on the minutes of the board of trustees, under the statutes of this state, is evidence of the acts of the board in so far as binding the public is concerned.

The board in power at the time it was alleged the plaintiff was employed had the right to make a contract with her, which, if made by them, could not be set aside or abrogated by their successors in office, except for legal cause in appropriate proceedings. Yerger v. State ex rel. Brown, 91 Miss. 802, 45 So. 849. In this case the outgoing board of trustees of the state penitentiary while in office

elected Yerger as clerk of the board for the ensuing year. The term expired on January 1st and their successors came into office and conceived they had the right to select their own clerk, and proceeded to elect another than Yerger, and attempted to discharge him. Yerger refused to yield his office, and an action was instituted to secure possession of the office. The court held that the outgoing board, whose terms would soon expire, had the legal authority to make a selection of Yerger as clerk, and that his selection was valid.

It is often expedient and beneficial for school trustees to select teachers in advance of the opening of the schools, and beneficial to the teachers to have contracts of employment prior to the opening of the schools, so that each can rest in confidence that there will be no trouble in securing teachers, and teachers in securing employment. It is the general practice to select teachers for the ensuing term near the close of the school term, and often some time in advance of the opening of the new term. There is nothing to prevent such action by the trustees, and it is beneficial to the public.

It is the law that the allegations of a declaration must be taken as true for the purpose of the demurrer, and the court must treat them as true for the purpose of determining whether the declaration states a cause of action.

If the allegations of the declaration in the case at bar are true, there was an agreement between the plaintiff and the trustees, and she was employed for the period set forth in the declaration, and her compensation was to be fixed under the schedule set forth.

It was the duty of the board of trustees to enter upon its minutes the contract so made evidencing the agreement between the board and the plaintiff. If the board had elected her, and she had accepted the employment, all that was necessary was to enter that agreement upon the minutes of the board. Under the statute above referred to, it is not necessary to draw up a formal contract

to be signed by the board and the teachers, since the minutes are sufficient evidence. It is a general principle of law that the breach of a legal duty owed by one person to another when damages have resulted therefrom gives the right to a cause of action. This form of action is called in law a tort. Section 24 of the State Constitution provides that every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay. Of course the injury referred to must be a legal injury.

The board of trustees, on the acceptance of the contract by the plaintiff in this case, owed her the duty to reduce the contract to writing on its minutes, which is usually done by the secretary of the board, signed by the president, but approved by the board in an open meeting. This case is controlled by the case of Whitehurst v. Smith, 170 Miss. 535, 155 So. 683, wherein it was held that where the principal of a school was denied a contract through alleged unlawful action of the superintendent, an action would lie against the superintendent and her bond, or person who unlawfully usurped teacher's place and received pay therefor, or against both, but not against the public and its funds.

Had the appellant applied seasonably for mandamus to compel an entry of the contract on the minutes of the school board, and to compel them to receive her as a teacher in the schools, she could have secured an enforcement of her contract; but her failure to do this did not absolve the board from their duty to enter the contract upon the minutes, if it was made as alleged in the declaration. Having failed to do this, the trustees breached their duty to the plaintiff, appellant here, and became liable for such damages as flowed from such breach of duty to her. It is one thing to establish a right against public funds and bodies, and another to establish rights flowing from a breach of a tortious nature, or a duty owed to the person.

When a teacher has procured a license and is entitled to teach school, and secures employment, a change of organization, or membership of a board of trustees, does not authorize a rescission of a contract, or the ignoring of it. The board, in the eyes of the law, is a continuous body, although its members may from time to time be changed. A board, within the scope of its authority and powers under the law, binds the public for whom the board acts. Rights accrue to persons dealing with a board of trustees when it has acted within the scope of its authority, and these rights cannot be legally ignored. Brown v. Owen, 75 Miss. 319, 23 So. 35; Whitman v. Owen, 76 Miss. 783, 25 So. 669; State v. Morgan, 141 Miss. 585, 106 So. 820; McCandless v. Clark, 172 Miss. 315, 159 So. 542, and Whitehurst v. Smith, 170 Miss. 535, 155 So. 683.

Of course, there may be causes sufficient to justify the discharging of a teacher, but the trustees have no arbitrary authority to unlawfully terminate the contract of a teacher. It is true that officers are not liable for the honest exercise of discretionary powers confided to them, but when they go outside their powers and commit wrongs under the color of office, there is liability. They are not given immunity from willful wrongs or malicious acts.

Many other authorities could be cited to sustain the principle here announced, but we deem those cited sufficient for the guidance of the court on a remand of the case.

Reversed and remanded.